# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE G. OCEJO, | ) 1:10-cv-01604 GSA |
| Plaintiff, | ) **ORDER REGARDING PLAINTIFF'S** |
| | ) **SOCIAL SECURITY COMPLAINT** |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Jose G. Ocejo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 9 & 10.)

1

# FACTS AND PRIOR PROCEEDINGS[2,3]

Plaintiff filed an application for disability insurance and supplemental security income benefits, alleging disability beginning April 20, 2001. *See* AR 13. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 110-124, 130-133. ALJ Michael J. Kopicki held a hearing on January 15, 2009, and issued an order denying benefits on June 24, 2009, finding Plaintiff was not disabled. AR 13-21, 22-69. On July 8, 2010, the Appeals Council denied review. AR 1-3.

**Hearing Testimony**

ALJ Kopicki held a hearing on January 15, 2009, in Fresno, California. Plaintiff appeared and testified with the assistance of a Spanish language interpreter. He was represented by attorney Melissa Proudian. Vocational Expert ("VE") Jose L. Chaparro also testified. AR 22-69.

At the time of the hearing, Plaintiff was living with his "wife" or partner and three children in Orange Cove, California. AR 26-27, 29 (not married). The family receives food stamps and Aid to Families with Dependent Children. AR 27. Plaintiff has a driver's license and when he was asked whether he still drove he replied, "[n]o." AR 27. Later, when asked when he last drove, Plaintiff replied, "I think I drove yesterday or the day before yesterday." AR 28. He drives because "[t]he pain makes [him] go out there to crash." AR 38.

Plaintiff was born on September 26, 1970 and was thirty-eight years old at the time of the hearing. He completed the sixth grade in Mexico. He can read and write in Spanish, and cannot speak "too much" English. AR 28. He is five feet six inches tall and weighs about 220 pounds. AR 28-29.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Plaintiff has previously applied for Social Security benefits; most recently he received an unfavorable decision on August 25, 2006, by ALJ James E. Ross. *See* AR 70-81.

When asked about the onset of his disability, Plaintiff replied that it began on April 20, 2001. AR 29. His most significant condition is the lower back pain. AR 29. Asked to describe the pain, Plaintiff indicated it is "strong" and always present. It rates as an eight to nine on a scale of one to ten. AR 29-30. The pain extends up to his neck and into his left leg and foot. AR 30. Flexing side to side increases the pain. AR 30.

Pain medication "calms" the pain "for a while," but it returns after about three hours. AR 30-31. He is currently taking the following prescribed medications: Methadone, Hydrocodone, "Imipramine, Rinka, Soma, Rinky . . . [a]nd Sampro."[4] AR 31. The medications cause drowsiness. AR 31.[5] Injections have helped, but only for about a day. AR 33. Plaintiff has also tried physical therapy, occupational therapy, heating pads and a TENS unit, but has not had much success. AR 33. On January 31, 1994, a laminectomy was performed. AR 34. Plaintiff worked thereafter because "the insurance . . . said [he] was fine." AR 34.

Plaintiff has also received treatment for gastritis or stomach issues, chest pain and neck pain. AR 35. Asked whether any doctor has ever explained why Plaintiff suffers such pain, Plaintiff indicated he has been told "it's because a disc, or I don't know something in my back is pressing my nerves." AR 36.

Despite treatment for depression, including prescription medications Cymbalta and Elavil, Plaintiff continues to "feel really bad" and occasionally cannot stand the pain. The medications do not stabilize his mood. AR 35.

Asked to describe a typical day, Plaintiff said he is "just there at home very desperate." AR 36. He does not do any housework but can prepare a simple meal in the microwave. He can also tend to his own personal hygiene needs. AR 36. He has difficulty tying his shoe laces because it is difficult to bend over. AR 36-37. When asked whether he shopped, Plaintiff replied that he gets "bored" and "very anxious with the noise." AR 37. Plaintiff does not watch a lot of

---

[4] At page 265 of the Administrative Record, Plaintiff's medications were listed as follows: Triavil, Lyrica, Soma, Requip, Methadone, Ibuprofen, Lexapro, Norco and Prevacid.

[5] ALJ Kopicki asked Plaintiff if he had taken too much medication on the date of the hearing because Plaintiff appeared to be very tired, his eyes were almost closed and he was not speaking clearly. Plaintiff indicated he took "Rinka, Soma and one Hydrocodone" on that date, but did not take more than prescribed. AR 31-32

television and sometimes turns on the radio. AR 37. He does not have a personal computer. AR 38. He can read for about three to four minutes. AR 37. He reads "little books" in Spanish to his son. AR 37-38. He does not have any hobbies, is not a member of any clubs or organizations, and does not attend religious services. AR 38. Plaintiff does not have any friends, and while he has family in Orange Cove, he does not visit them often. AR 39.

When asked how far he can walk, Plaintiff indicated he can walk about a block. He can sit and stand for about fifteen minutes before becoming uncomfortable. He estimated he could lift about five pounds. AR 40. Plaintiff could not perform a job that permitted him to change positions between sitting and standing because the medications make him "very sleepy" and without the medications he would be unable to endure the back pain. AR 41.

During an average day, Plaintiff rests often, for a total of about two hours a day. AR 41-42. He has difficulty sleeping every night. AR 42. He can concentrate for about fifteen minutes before needing to take a break. AR 42-43. He does not like to be around others because of the noise. AR 43.

Since his operation in 1994 Plaintiff has been in pain. Since August 2006, his pain has worsened. He has also suffered mentally since that time. AR 44.

VE Chaparro indicated that Plaintiff's past relevant work includes: fruit harvest worker, medium and unskilled, although Plaintiff performed the work at a heavy exertional level; kitchen helper, medium and unskilled; and metal production inspector, medium and unskilled. AR 45, 49-50.

The VE was asked to consider a hypothetical worker of Plaintiff's age, education and work history, who is literate in Spanish, but not English, and whom can lift and carry twenty pounds occasionally and ten pounds frequently, can sit, stand or walk for six hours in an eight-hour workday, and can occasionally stoop, crouch, crawl, kneel and climb stairs. AR 50-51. VE Chaparro indicated such an individual would be unable to perform Plaintiff's past work. AR 51. Nevertheless, other work exists in the national economy that the individual could perform,

including: "apple protecting header," light and unskilled, DOT[6] 920.687-010, with approximately 4,600 available positions in California; bottle packer, light and unskilled, DOT 920.685-026, with about 1,100 position available in California; and housekeeping cleaner, light and unskilled, DOT 323.687-014, with about 4,200 jobs available in California. AR 51-52.

In a second hypothetical, the VE was asked to assume a hypothetical worker of Plaintiff's age, education and work history, whom cannot lift any weight, and whom can sit, stand and walk for one-hour in an eight-hour day. AR 52-53. The VE agreed that it was fair to say "no past relevant work or any other work whatsoever" is available for such an individual. AR 53.

In a third hypothetical, the VE was asked to assume a hypothetical worker of Plaintiff's age, education and work history, whom can lift and carry ten pounds occasionally and five pounds frequently, can stand and walk no more than two hours in an eight-hour workday and sit for six hours in an eight-hour workday with a sit/stand option, and whom can only occasionally stoop, crouch and kneel, and should never crawl or climb ladders or scaffolds. Further, the worker would be limited to simple, routine tasks, with no more than occasional contact with the general public, and must avoid exposure to loud noise. AR 53. The VE indicated the individual would be unable to perform Plaintiff's past relevant work or any work in the national economy. AR 53-54. Asked whether there were sedentary unskilled jobs available with a sit/stand option, VE Chaparro indicated sedentary jobs performed at a bench, for example, may be available. AR 54-55. Representative unskilled sedentary work that may be performed with the ability to alternate positions would include the inspector/tester/sorter group, including a table worker, sedentary and unskilled, SVP[7] of two, DOT 739.687-182, with about 800 positions available in California, and a lens inserter, sedentary and unskilled, SVP of two, DOT 713.687-026. AR 56-57.

The ALJ then asked the VE to consider a hypothetical worker of Plaintiff's age, education and work history, whom can lift and carry ten pounds occasionally and five pounds frequently,

---

[6]"DOT" refers to the Dictionary of Occupational Titles.

[7]"SVP" refers to Specific Vocational Preparation.

5

can stand and walk no more than two hours in an eight-hour workday and sit for six hours in an eight-hour workday, with the ability to occasionally stoop, crouch and kneel; crawling and climbing were precluded.  Further, the individual was limited to simple, routine work and only occasional contact with the general public.  AR 57.  The VE responded that representative work the individual could perform included escort vehicle driver, sedentary and unskilled, DOT 919.663-022, with approximately 2,800 jobs available in California.  AR 58.

Plaintiff's counsel asked the VE to consider the last hypothetical, with the additional limitation of the need for unscheduled breaks of about two hours during the workday. The VE indicated all work would be eliminated for such an individual.  AR 58-59.  All work would also be eliminated if the individual was unable to concentrate for increments greater than fifteen minutes.  AR 59.  Asked to consider an individual impaired by the side effects of prescribed medication such that the individual could not function for eight-hours a day, five days a week, VE Chaparro agreed no work would be available for such an individual.  AR 60.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 270-757.  The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 13-21.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 20, 2001.  AR 15.  Further, the ALJ identified degenerative disc disease of the lumbar spine as a severe impairment.  AR 16-17.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 17.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, can walk and/or stand for six hours, as well as sit for six hours, in an eight-hour workday, with the ability to occasionally stoop, crouch, crawl, kneel and climb stairs.  AR 18–20.

Next, the ALJ determined that Plaintiff was unable to perform his past relevant work. Nevertheless, considering Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Specifically, the ALJ found Plaintiff could perform the work of an apple packing header, bottle packer, and housekeeping cleaner. Therefore, the ALJ found Plaintiff was not disabled. AR 20-21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and are not free of legal error because the ALJ failed to properly consider the opinions of Drs. Barnett and Kissinger.

## **DISCUSSION**

### *The ALJ's Consideration of the Medical Opinion Evidence*

Plaintiff argues that the ALJ erroneously rejected the opinions of an examining physician and a treating physician in favor of the opinion of a state agency physician. (Doc. 12 at 5-14.) The Commissioner argues no error occurred. (Doc. 13 at 5-10.)

**1.     Applicable Legal Standards**

**A.     *Step Two***

At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment. The regulations define a non-severe impairment as one that does not significantly limit the claimant's physical and mental ability to do basic work activities. An impairment is not severe "if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508; 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. §§ 404.1529, 416.929. An overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir. 1994).

The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987). Further, the ALJ must consider the combined effect of all of the claimant's impairments on his ability to function, without regard to whether each alone was sufficiently severe. 42 U.S.C. § 423(d)(2)(B). The combined effect "shall be considered throughout the disability determination process." *Id*. The adjudicator's role at step two is further explained by Social Security Ruling ("SSR") 85-28:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.

### B.   *Medical Opinions*

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d at 506 n.4; *Gallant v. Sullivan*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

### 2. Summary of Relevant Medical Evidence

#### *Orthopedic Evaluation - Jonathan M. Gurdin, M.D.*

On November 28, 2006, Jonathan M. Gurdin, M.D., performed an orthopedic evaluation. Dr. Gurdin's physical examination noted Plaintiff to be a well developed Hispanic male, five feet, six inches tall, weighing 226 pounds. Plaintiff moved around constantly during the interview in apparent discomfort from low back pain. The doctor noted "emotional overlay with an exaggerated pain response." AR 347.

While Plaintiff complained of pain throughout the spine, no muscle tightness was detected. Positive Waddell signs[8] were "definitely" present. Grip strength was noted to be normal at 5/5. Plaintiff walked slowly with a slight left-sided antalgic limp. Straight leg raising was 45 degrees on the right and 25 degrees on the left with low back pain. Seated straight leg

---

[8] Waddell signs or tests are employed to detect malingering.

10

raising was negative bilaterally. Plaintiff "gave a poor effort to cooperate with flexion about the left knee," yet strength was otherwise intact in both legs at 5/5. AR 348.

Dr. Gurdin's diagnoses included lumbar disc disease with one prior surgery, cervical and thoracic myofascitis, and "apparent emotional overlay." AR 349. In Dr. Gurdin's opinion, Plaintiff had some genuine low back pain, but an exaggerated pain response. The doctor believed Plaintiff would benefit from ongoing physical therapy and possible injection therapy. Dr. Gurdin concluded as follows: "His limitations appear to be entirely on the basis of pain which is difficult to objectively evaluate. Because of this I am unable to accurately estimate his activity capacity." AR 349.

*Psychiatric Evaluation - Michael S. Barnett, M.D.*

In December 2006, board certified psychiatrist Michael S. Barnett, M.D., performed a psychiatric evaluation. Dr. Barnett noted that Plaintiff was "casually and sloppily dressed, moderately obese and [] tired." AR 350. Plaintiff appeared to be in physical pain, fidgeted during the interview, and "cri[ed] profusely during the evaluation." AR 350.

Plaintiff indicated he has been overwhelmed by pain for five or six years and, as a result, he cannot work or help his family. He has difficulty sleeping because the pain awakens him. He suffers from low energy and poor concentration. While he has considered suicide, he has not made an attempt. He denied psychotic or manic symptoms. AR 350.

Dr. Barnett's mental status examination revealed "a tearful, emotionally fragile, Hispanic male in marked physical pain." AR 351. Plaintiff's responses were slow and vague, and his thoughts were coherent and organized. His mood was depressed, but there was no suicidal ideation or psychotic symptoms. Plaintiff identified the year, but did not know the date or month. He was unable to perform "serial threes." His recent memory was intact and he recalled two of five objects in five minutes. He could not name any of California's geographical neighbors, and was unable to perform basic mathematical equations. Finally, Plaintiff was unable to interpret the meaning of simple, common proverbs. AR 351.

At Axis I, Dr. Barnett diagnosed dysthymia[9], and at Axis V noted a current GAF[10] score of 51. AR 351. The doctor noted inadequate treatment for Plaintiff's depression, adding that the long term effects of the various pain medications taken by Plaintiff may affect his mood and contribute to his depression. AR 351. Dr. Barnett concluded the symptoms would impair Plaintiff's ability to do work-related tasks, including having difficulty being able to understand and remember simple or complex work-related instructions and tasks, the ability to sustain focused attention and concentration long enough to complete routine work-related tasks appropriately and without special supervision, an inability to interact independently, or appropriately and effectively communicate with coworkers, supervisors and the public, and great difficulty adapting to changes, hazards or stressors in the work environment. AR 351-352. Dr. Barnett noted that Plaintiff's prognosis was poor. AR 352.

### *Physical Residual Functional Capacity Assessments*

In a Physical Residual Functional Capacity Assessment dated March 2, 2007, Dr. M. O. Nawar,[11] determined that Plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds, could stand or walk for about six hours in an eight-hour day, could sit about six hours in an eight-hour day, and was not limited with regard to pushing and pulling. AR 355. He could frequently balance, and occasionally climb, stoop, kneel, crouch and crawl. AR 356. Dr. Nawar did not identify any manipulative, visual, communicative or environmental limitations. AR 356-357.

---

[9] Dysthymia is a chronic type of depression in which a person's moods are regularly low. However, symptoms are not as severe as with major depression. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001916/.

[10] The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM IV"). A GAF between 51 and 60 indicates "[moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). DSM- IV at 34.

[11] Dr. Nawar is apparently an oncologist as designated by the medical consultant code number 27. *See* Medical Specialty Codes at https://secure.ssa.gov/poms.nsf/lnx/0426510090.

In a case analysis of the same date, Dr. Nawar noted inconsistencies between the written reports reviewed and Plaintiff's allegations. The doctor concluded Plaintiff's depression was non severe. AR 360.

In an assessment dated July 19, 2007, Dr. A. M. Khong[12] prepared a Physical Residual Functional Capacity Assessment in which he opined that Plaintiff was capable of occasionally lifting and carrying twenty pounds and frequently lifting and carrying ten pounds, standing or walking for about six hours in an eight-hour day, sitting about six hours in an eight-hour day, and was not limited with regard to pushing and pulling. AR 487. Plaintiff could occasionally climb, stoop, kneel, crouch and crawl, and could frequently balance. The doctor did not identify an manipulative, visual, communicative or environmental limitations. AR 488-489.

In a case analysis of the same date, Dr. Khong noted Plaintiff to be "quite determined in his pursuit of disability." AR 492. The doctor noted Plaintiff's complaints regarding back pain were exaggerated in light of the objective and radiological findings, and that the treatment records did not support a finding of a severe psychiatric impairment. AR 492.

### *Psychiatric Review Technique*

Charles Lawrence, Ph.D., a psychological consultant, prepared a Psychiatric Review Technique on April 11, 2007. Dr. Lawrence concluded that Plaintiff suffers from a non-severe medically determinable impairment that does not satisfy the diagnostic criteria of Listing 12.04, and noted a depressive disorder, not otherwise specified. AR 361-371. He found no restriction in the activities of daily living. As to Plaintiff's functional limitations regarding difficulties in maintaining social functioning and difficulties maintaining concentration, persistence, or pace, the doctor indicated the degree of limitation was mild. There were no episodes of decompensation. AR 371-373.

### *Glenn C. Kissinger, M.D.*

On December 11, 2008, Dr. Kissinger of the Dinuba Medical Clinic completed a Medical Source Statement - Psychiatric Psychological. The doctor indicated that he has treated Plaintiff

---

[12] Dr. Khong is apparently an ophthalmologist as designated by the medical consultant code number 28. *See* Medical Specialty Codes at https://secure.ssa.gov/poms.nsf/lnx/0426510090.

since May 24, 2005, for pain. Dr. Kissinger opined that Plaintiff lacks the ability to: (1) relate and interact with supervisors and coworkers; (2) understand, remember and carry out simple one-or-two step job instructions; (3) deal with the public; (4) maintain concentration and attention for at least two-hour increments; and (5) withstand the stress and pressures associated with an eight-hour work day and day-to-day activity. AR 524. Further, the doctor indicated Plaintiff's prognosis was poor and that "[h]e will have this problem for the rest of his life." AR 525. The doctor noted back surgery in 1994, issues of delayed treatment and "poor pain control." AR 525.

A week later, on December 18, 2008, Dr. Kissinger completed a Physical Capacities Evaluation form. AR 526-527. He indicated that Plaintiff was capable of sitting, standing and/or walking for a total of one-hour in an eight-hour workday, an inability to lift or carry any weight, and an inability push or pull with either his arms or legs. AR 526. Plaintiff could not bend or squat, and could only occasionally crawl, climb, kneel or stoop. AR 526. The doctor opined that Plaintiff was able to perform simple grasping, and was not limited in the areas of environment and vision. AR 526.

### 3. ALJ's Findings

Here, at step two of the sequential analysis, ALJ Kopicki found as follows:

> The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.
> The claimant has no limitation in his activities of daily living attributable to his mental impairment, a mild limitation in social functioning and concentration, persistence, or pace, and there is no evidence of any episodes of decompensation. The claimant testified that he can take care of his personal needs, but is limited in his daily activities. This limitation is attributable to the claimant's pain, rather than his mental impairment. He also testified that he is married with three children, but otherwise he does not have any social life, friends, or hobbies. He said he would like to take his son to the park, but doesn't feel well enough. He said he does read books to his youngest child and tries to teach him things, and is able to drive, which evidences an ability to concentrate. Based on the testimony and the record it seems that most of the claimant's limitations in these four areas are attributable to the claimant's physical symptoms rather than his mental disorder.
> The claimant's treating physician Dr. Kissinger opined that the claimant was unable to relate and interact with supervisors and coworker[s], understand, remember, and carry out technical or complex jobs, understand, remember, and carry out simple one-or-two step jobs, and unable to deal with the public. Dr. Kissinger also concluded that the claimant could not maintain concentration or

> attention for at least 2-hour increments or withstand the stress or pressures associated with an 8-hour workday and day to day work activity. I give Dr. Kissinger's opinion very little weight because I find that it is based strictly on the claimant's subjective complaints and is inconsistent with the record as a whole.
>   Consultative Psychiatrist Dr. Barnett diagnosed the claimant with a dysthymic disorder and opined that the claimant's depression impairs his ability to do work related tasks in an 8-hour day, causes problems with concentration and interaction with coworkers, the public, and supervisors, and causes great difficulty adapting to changes, hazards, or stressors in a work environment. He also said that the claimant's prognosis was poor and his physical problems and lack of treatment complicate the problem. I give this opinion little weight because not only is the diagnosis inconsistent with the limitations given, it is inconsistent with the evidence as a whole and is based in part, on assumptions about the claimant's physical condition (pain) that are outside the purview of Dr. Barnett's examination. A State agency psychiatric consultant expressed the opinion that Dr. Barnett's conclusions were flawed as they were based on the claimant's exaggerated presentation of emotional distress and cognitive deficits. Having reviewed the record in its totality and witnessed the claimant at the hearing, I find the State agency medical advisor[']s interpretation of the claimant's psychiatric presentation persuasive.
>   The State agency psychiatric consultant concluded that the claimant's mental impairment caused no restriction in his activities of daily living, a mild restriction in his social function and concentration, persistence, and pace, and no episodes of decompensation.
>   The State agency [psychiatric consultant] further found the claimant's mental impairment was not severe because he had favorable results with medication and it had not been changed in more than a year. The claimant's minimal mental health treatment was also noted by the medical consultant. I give this opinion significant weight because it is consistent with the record as a whole.
>   Because the claimant's medical determinable impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere.

AR 16-17, internal quotations omitted.

At step four of the sequential evaluation, ALJ Kopicki held as follows:

>   Consultative orthopedic examiner, Dr. Gurdin reported a limited range of motion of the claimant's spine, difficulty changing positions, and complaints of pain. However, Dr. Gurdin also reported that there appeared to be emotional overlay with an exaggerated pain response, positive Waddell's signs and positive straight leg raises in the supine position, which were negative bilaterally in the seated position. Dr. Gurdin opined that the claimant's limitations appear to be based entirely on pain and he was unable to accurately estimate the claimant's activity capacity based on the examination. Although Dr. Gurdin did not set forth any specific limitations on the claimant's abilities, I take this report into consideration in making my decision and find that it weighs against the claimant's credibility.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>   The claimant's treating physician Dr. Kissinger opined that the claimant could sit, stand, and walk for only 1 hour in an 8-hour day, never lift any amount of weight and never use push and pull arm controls. He also opined that the claimant could never squat or bend, and only occasionally crawl, climb, kneel, and stoop. The doctor did say that the claimant could perform simple grasping, fine

manipulation and feeling with both hands.  In a progress note Dr. Kissinger opined that the claimant was unable to work and unable to stand, sit or lie for an extended period of time.  I give this opinion very little weight because it was strictly based on claimant's subjective complaints, which are questionable based on the consultative examiner's report and the clinical and diagnostic findings of record.

The State agency medical consultants concluded that the claimant could lift and carry 20 pound[s] occasionally and 10 pounds frequently, stand and/or walk 6 hours and sit 6 hours in an 8-hour workday, and occasionally climb, stoop, kneel, crouch, and crawl.  I give this opinion substantial weight because it is consistent with the overall record.

### 4.     Analysis

Here, the ALJ clearly performed a careful evaluation of the applicable medical findings at step two.  Plaintiff's argument that ALJ Kopicki erred in not finding his depression to be a severe impairment is unpersuasive.  The ALJ cited the lack of objective medical evidence in making his finding.  In affording Dr. Barnett's opinion little weight, the ALJ noted the opinion was inconsistent with the record as a whole, was internally inconsistent, and was based in part on "assumptions about [Plaintiff]'s physical condition (pain) that are outside the purview of Dr. Barnett's examination."  Inconsistency with the medical record is a specific and legitimate reason to discount the opinion of an examining physician.  *Magallanes v. Bowen*, 881 F.2d at 751.  Rejecting an opinion that contains internal inconsistencies is a specific and legitimate reason to discount the opinion.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also Buckner-Larkin v. Astrue*, 2011 WL 4361652 (9th Cir. Sept. 20, 2011).  Further, an ALJ may properly discount an opinion offered outside the area of one's expertise.  *Smolen v. Chater*, 80 F.3d at 1285 (citing 20 C.F.R. §§ 404.1527(d)(5), 416.9127(d)(5)).  Thus, it follows that ALJ Kopicki could properly discount Dr. Barnett's opinion to the degree it relied upon Plaintiff's complaints of physical pain because the doctor was performing a psychiatric examination.  The ALJ did not err.

ALJ Kopicki provided two reasons for affording Dr. Kissinger's opinion little weight: (1) it was based upon Plaintiff's subjective complaints and (2) it was inconsistent with the medical record.  Where a treating physician's opinion relies primarily on the claimant's discredited subjective complaints, an ALJ may properly reject the opinion on that basis.  *Thomas v.*

1  *Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).
2  Next, inconsistency with the medical record is a specific and legitimate reason for affording a
3  treating physician's opinion less weight. *Magallanes v. Bowen*, 881 F.2d at 751 (a lack of
4  supporting clinical findings is a valid reason for rejecting a treating physician's opinion).  Here,
5  for example, Dr. Kissinger opined that Plaintiff could not lift any weight, yet Plaintiff himself
6  testified he could lift five pounds.  *Cf.* AR 40 to 526.

      ALJ Kopicki afforded the opinion of the state agency opinion substantial weight because it was consistent with the record.  When the ALJ rejects the opinion of an examining physician in reliance on the non-examining physician, "reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d at 1041; *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d at 751-752.

      In sum, this Court's review of the record supports the ALJ's determination. The ALJ did not err at step two regarding Plaintiff's mental impairment, nor did he err regarding his assessment of the medical opinion evidence.

## **CONCLUSION**

      Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Jose G. Ocejo.

      IT IS SO ORDERED.

Dated: **November 15, 2011**　　　　　　　　　　/s/ **Gary S. Austin**
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE